

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| SYRECEA PARKER, | § | |
|                 Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 3:18-2740-MGL-KDW |
| | § | |
| PREMISE HEALTH EMPLOYER | § | |
| SOLUTIONS, LLC, | § | |
|                 Defendant. | § | |
| | § | |

**ORDER ADOPTING THE REPORT AND RECOMMENDATION AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Syrecea Parker (Parker) filed this lawsuit against her former employer, Defendant Premise Health Employer Solutions, LLC (Premise Health), alleging six causes of action: race discrimination based on 42 U.S.C. § 1981; violations of the Americans with Disabilities Act (ADA), as amended; violations of the Family Medical Leave Act (FMLA); retaliation under § 1981; breach of contract; and breach of contract with fraudulent intent.  The Court has federal jurisdiction over the race discrimination, ADA, FMLA, and retaliation claims under 28 U.S.C. § 1331, and supplemental jurisdiction over the breach of contract and breach of contract with fraudulent intent claims in accordance with 28 U.S.C. § 1367.

The matter is before the Court for review of the Report and Recommendation (Report) of the United States Magistrate Judge suggesting Premise Health's motion for summary judgment be granted.  The Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

The Magistrate Judge makes only a recommendation to the Court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976).  The Court is charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions.  28 U.S.C. § 636(b)(1).

The Magistrate Judge filed the Report on June 5, 2020, Parker filed her Objections to the Report (Objections) on June 26, 2020, and Premise Health filed its reply to the Objections on July 10, 2020 (Reply).  The Court has reviewed the Objections, but holds them to be without merit.  It will therefore enter judgment accordingly.

Premise Health contracts with employers to operate health clinics that employers make available to their employees and their families.  Premise Health employed Parker as a receptionist at a health clinic for employees of a Michelin facility in Lexington, South Carolina (Health Clinic).  Parker, an African-American woman, is a veteran of the United States Navy and suffers from service-connected disabilities, including migraines, muscle spasms, a hip disorder, a knee issue, and severe anxiety.

As such, Parker is required to attend various medical appointments regarding her multiple service-connected disabilities.  During the hiring interview process with Premise Health, Parker informed her interviewer of these disabilities and the medical appointments that would regularly follow.

Throughout Parker's employment, she was reprimanded for a variety of workplace deficiencies.  The Health Clinic documented these workplace deficiencies and, in certain instances

in which Parker disputed a reprimand, investigated the underlying facts to arrive at a well-documented conclusion.

Parker's alleged workplace deficiencies included, but were not limited to, providing patients with incorrect medical appointment arrival times; arguing unnecessarily with a medical provider; providing unauthorized medical advice to a patient; refusing to perform required job functions; and arguing with Health Clinic staff in front of patients, and as the Court more fully discusses below, treating a cancer patient unprofessionally.

Although Parker's 2016 Year End Performance Evaluation (2016 evaluation) provided she was achieving workplace expectations and she received a forty-four cent raise per hour, all but one of the workplace written warnings she received were issued r after the 2016 evaluation. The Court will also discuss these post-2016 evaluation workplace written warnings in greater detail below.

Mixed within these various purported workplace deficiencies was an incident that occurred on Friday, January 27, 2017. When Parker awoke that morning, she did not feel well. She texted her supervisor, Hannah Burbage (Burbage), and stated that she did not feel well and would be arriving to work later in the day. Burbage responded to Parker via text message, "Okay hope you feel better!"

Parker arrived at the Health Clinic around noon, but was unable to remain at work and subsequently decided to seek medical attention at an emergency department. Parker texted Burbage and stated as much. Later in the afternoon, Burbage telephoned Parker. The facts of this phone call are in dispute. According to Burbage, after she advised Parker she would write her up as a result of her leaving work in the middle of her shift, Parker became insubordinate and abruptly ended the call mid-sentence. Parker, however, avers she was polite during the phone call and did not hang up on Burbage.

3

On January 30, 2017, Burbage issued to Parker a Written Warning Correct Action Document (Written Warning I) for an attendance violation and unprofessional conduct based on Parker's allegedly disrespecting a supervisor on the January 27, 2017, phone call. Parker, on February 3, 2017, sent a letter to the Health Clinic's human resources (HR) department and disputed the factual content and conclusions in Written Warning I.

Of importance to note, in this February 3, 2017 letter to HR, Parker made no mention of being subject to any racially offensive or inappropriate comments by any Premise Health employee or agent. In fact, Parker attributed the January 27, 2017, Written Warning I as retaliation related solely to Burbage's frustration with having to miss an out-of-town birthday party as a result of Parker's needing to seek medical assistance at the emergency department. *See* Parker's February 3, 2017, letter to Premise Health, Premise Health's motion for summary judgment at 242–43 ("I feel that this written documentation [Written Warning I] is retaliation regarding an incident that transpired on January 27, 2017[,] between my Office Manager [Burbage] and myself which was a result of me needing to seek medical attention, and interfered with her plans to travel out of town on that day."). The HR department investigated the matter, and upon review, determined that the unprofessional conduct warning should stand, but the attendance portion of the disciplinary action could not be verified.

While investigating Written Warning I, HR found numerous other instances of inappropriate and unprofessional work-related conduct by Parker. At the conclusion of HR's investigation of Written Warning I, on March 27, 2017, it issued, another written warning (Written Warning II) to Parker. Written Warning II addressed multiple instances of Parker's inappropriate and unprofessional conduct in the workplace, as well as multiple instances of her inability to arrive to work on time and her leaving work prior to the end of her shift.

4

On April 5, 2017, Parker made a complaint regarding Written Warning II to the Health Clinic's Ethics Line (Ethics Line Complaint I).  Parker indicated she was the victim of retaliation and a hostile work environment by Burbage and a nurse practitioner named Priscilla Davis (Davis).  Specifically, Parker claimed, as she did in her February 3, 2017, letter, she had been retaliated against and the work environment became hostile after receiving Written Warning I.  HR investigated Parker's Ethics Line Complaint I and determined Premise Health had not discriminated or retaliated against Parker.

Approximately two months later, on June 8, 2017, Parker received a "Final Warning" Corrective Action Document (Written Warning III).  This document further outlined examples and instances of Parker's purported unprofessional conduct at Premise Health.  Parker subsequently submitted another Ethics Line complaint on June 26, 2017, (Ethics Line Complaint II), asserting retaliation by Burbage and others, as a result of the initial Ethics Line Complaint I she made on April 5, 2017.  Some of the examples of retaliation, according to Parker, included Burbage escorting her to company meetings, Burbage removing her administrative duty of recording meetings, being singled out and given documents about concerns that have not been given to coworkers, and having weekly workplace performance meetings with Burbage and another supervisor.

The following day, in a June 27, 2017, letter to Premise Health, Parker stated "I have tried to report issues to my Health Center manager, that did not remain confidential, which created an issue with [Davis].  Since I challenged the first [January 27, 2017] write-up, which I maintain that is [] retaliation because [Burbage] could not attend a child's birthday party, I have been labeled to have a behavior problem."  Parker's June 27, 2017, letter to Premise Health, Premise Health's motion for summary judgment at 249–52.

In this letter, Parker complained of retaliation, hostile work environment, and disparate treatment. HR subsequently investigated Parker's Ethics Line Complaint II and determined Parker's complaint was unsubstantiated. As part of HR's investigation, it interviewed seven witnesses, including Parker. HR compiled its findings into a July 26, 2017, memorandum.

Parker filed a Charge of Discrimination (Charge) dated July 17, 2017, with the South Carolina Human Affairs Commission (SCHAC) and the Equal Employment Opportunity Commission (EEOC). One week later, on July 24, 2017, a cancer patient called the health center to schedule his labs that the onsite nurse practitioner had ordered. According to the cancer patient, Parker refused to listen to his request, became argumentative with him regarding his labs order, and ultimately hung up on him. The cancer patient became so upset as a result of his interaction with Parker he traveled to the Health Clinic on August 1, 2017, and requested his medical records to transfer them to another medical provider.

The cancer patient filed a complaint with the Health Clinic manager regarding his experience with Parker. Parker was terminated the following day, August 2, 2017, and provided with a Termination Notification, which stated in part:

> Syrecea Parker's employment is being terminated for inappropriate conduct. On or about July 24th[,] a patient called the health center to schedule his labs that had been ordered by the onsite NP. Upon taking the call, [Parker] refused to listen to his request, became argumentative with him about the order itself and ultimately hung up on the patient.
>
> This interaction caused the patient to request his medical records as he preferred to go to an outside health center that would charge him for the labs, rather than continue to utilize the free services provided at the Micheline health center as he didn't want to interact with Parker any longer. When he came into the clinic to request his labs, he filed a complaint with the Health Center Manager and DCO.
>
> As a result of this continuing pattern of inappropriate conduct, the decision has been made to terminate . . . Parker effective August 2, 2017.

Syrecea Parker's Termination Notification, Premise Health's motion for summary judgment at 252.

Parker raises six objections to the Report. In the Objections, she addresses the claims in a different order from the order in which the Magistrate Judge discussed them in her Report. For the purposes of this Order, the Court will deal with the objections in the order used by the Magistrate Judge in her Report.

Parker's race-based discrimination claims are based on 42 U.S.C. § 1981 in the form of disparate treatment and hostile work environment. Regarding her disparate treatment claim under 42 U.S.C. § 1981, in Parker's first objection, she argues the Magistrate Judge incorrectly concluded her claim fails under the mixed motive framework.

Quoting *Jacobs v. N.C. Administrative Office of the Courts*, the Magistrate Judge noted a successful mixed-motive claim needs to include evidence of "'conduct or statements that both reflect directly the alleged discriminatory attitude *and* that bear directly on the contested employment decision.'" Report at 20 (quoting 780 F.3d 562, 577–78 (4th Cir. 2015)).

Parker's argument is based largely on her own conjecture." Report at 20. In her Objections, she addresses her allegations of racially offensive commentary Burbage and Davis made to her. Specifically, Parker refers to her deposition testimony where she testified Burbage and Davis made racially and culturally hostile comments about her natural hair and Burbage repeatedly called her Missy. Prior to Parker's deposition, however, she never complained of any such statements.

Regardless, Parker, in her Objections, fails to address the Magistrate Judge's discussion of *Jacobs* and the requirement, under a mixed-motive scheme, there must be evidence of conduct or statements that bear directly on the contested employment decisions. *See Jacobs*, 780 F.3d at 577–

78. Considering the evidence in a light most favorable to Parker, there is no evidence, either indirect or direct, to reflect a genuine issue of material fact as to whether race was a motivating factor in Parker's termination. But, even assuming a discriminatory attitude by the Health Clinic against Parker, the Magistrate Judge noted Parker's "evidence does not present genuine issues of material fact relating to an alleged discriminatory attitude that bore directly on the decision to terminate her." *Id*. at 20.

Next, Parker maintains the Magistrate Judge incorrectly suggested her race-based disparate treatment discrimination claim fails as a matter of law under the *McDonnell Douglas*, 411 U.S. 792 (1973), burden-shifting framework. Under this scheme, Parker must first prove a prima facie case of race discrimination. Citing *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), the Magistrate judge noted, "[t]o establish a prima facie case of race discrimination based on disparate treatment, Plaintiff must show: (1) she is a member of the protected class; (2) she suffered an adverse employment action; (3) at the time of the adverse action, she was performing at a level that met her employer's legitimate expectations; and (4) she was treated differently from similarly situated employees outside the protected class." Report at 20. The Magistrate Judge concluded Parker is unable to meet the third and fourth prongs.

As to the third prong, Parker contends Written Warnings II, and III contain false and fabricated information and serve only as retribution for her February 3, 2017, letter disputing the findings of Written Warning I. Parker argues her 2016 evaluation demonstrates she was meeting her employer's expectations at the time of her termination.

Under Parker's logic, once an employee receives a positive year-end review, she will always, regardless of further instances of workplace misconduct, be considered to be performing at a level that meet's his or her employer's legitimate expectations. Parker asks this Court to

essentially ignore her all workplace deficiencies that took place after the 2016 evaluation, especially the July 24, 2017, telephone interaction with the cancer patient.

Simply put, Parker has failed to show that, at the time of her termination, she was performing at a level that met her employer's legitimate expectations.  Thus, Parker fails to meet the third prong of the test set forth in *Coleman*.  Inasmuch as one must satisfy all four of the factors to demonstrate a prima facie case of race discrimination, the Court need not discuss Parker's failure to meet the fourth prong.

Turning now to Parker's hostile work environment claim made under 42 U.S.C. § 1981, she contends the Magistrate Judge made improper determinations of fact.  *See* Objections at 14 ("The Magistrate Judge has made impermissible determinations of a genuine issue[] of material fact in regards to whether comments made by Burbage and David concerning Plaintiff's hair style and Burbage's use of the racially offensive term of 'Missy' to refer to Plaintiff are actions sufficiently severe and persuasive so as to alter the conditions of her employment and to support her claim for Hostile Work Environment.").

"To prevail on a hostile work environment claim, 'a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's [protected characteristic]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer'"  *Guessous v. Fairview Property Investments, LLC*, 828 F.3d 208, 221 (4th Cir. 2016) (quoting *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011)) (internal quotations omitted).  "'When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

environment, Title VII [and therefore § 1981] is violated.'" *Id.* at 226 (quoting *Harris v. Forklify Sys., Inc.*, 510 U.S. 17, 21 (1993)).

In determining whether a hostile work environment exists, a Court "look[s] to the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Okoli*, 648 F.3d at 220. "To be actionable, the conduct must create an objectively hostile or abusive work environment, and the victim must also perceive the environment to be abusive." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001).

The Magistrate Judge, in her Report, underwent an analysis of the third prong of the four-element test set forth in *Guessous* and determined "Even accepting that [Parker] felt the environment to be abusive, [] nothing in [Parker's] argument or proffered evidence [] indicates an environment that could satisfy the objective prong of the test—[an environment] 'pervaded with discriminatory conduct aimed to humiliate, ridicule, or intimate, thereby creating an abusive atmosphere.'" Report at 25 (quoting *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 316 (4th Cir. 2008)). Inasmuch as the Court agrees with the Magistrate Judge's analysis that Parker cannot prove a prima facie case, the Court will overrule this Objection.

In Parker's second objection, she asserts the Magistrate Judge incorrectly determined she has failed to establish a prima facie case for her disability discrimination claim under the ADA. "In an ADA wrongful discharge case, a plaintiff establishes a *prima facie* case if [she] demonstrates that (1) [she] is within the ADA's protected class; (2) [she] was discharged; (3) at the time of [her] discharge, [she] was performing the job at a level that met his employer's legitimate expectations; and (4) [her] discharge occurred under circumstances that raise a

reasonable inference of unlawful discrimination." *Haulbrook v. Michelin North America*, 252 F.3d 696, 702 (4th Cir. 2001).

Here, it is not disputed that Parker satisfied the first two elements. Parker was within the ADA's protected class of disabled persons due to her physical ailments, and she was terminated from her place of employment. As it relates to the third element, however, whether at the time of her termination Parker was performing at a level that met her employer's legitimate expectations, Parker fails to demonstrate this element in the affirmative. As the Court discussed above, Parker is unable to establish a prima facie case of disability discrimination under the ADA inasmuch as she has failed to show she performed at a level that satisfied Premise Health's reasonable expectations. Consequently, the Court will also overrule the objection.

The Court notes the Magistrate Judge concluded Parker failed to establish a prima facie case of failure to accommodate under the ADA. Parkers offers no objection to this portion of the Report. The Court, having concluded there is no clear error, cite, accepts the Magistrate Judge's suggestion on this issue.

Turning to Parker's third objection, Parker maintains the Magistrate Judge incorrectly held she failed to establish a prima facie case of FMLA interference. Citing *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015), the Magistrate Judge noted a plaintiff needs to prove the following elements to assert a valid FMLA interference claim: (1) she is entitled to a FMLA benefit; (2) her employer interfered with the provision of that benefit; and (3) that the interference caused her harm.

The Magistrate Judge opined Parker fails to satisfy the third element of the FMLA interference test set forth in *Adams*—whether Parker demonstrated Premise Health's alleged interference caused her harm. The Court agrees with the Magistrate Judge's conclusion. The

11

record is devoid of any evidence Parker was terminated for her exercise—or attempt to exercise—FMLA-related leave.  Accordingly, the Court will overrule this objection, too.

Next, in Parker's fourth objection, she contends the Magistrate Judge erred in concluding she failed to prove a prima facie case of FMLA retaliation.  "FMLA claims arising under the retaliation theory are analogous to those derived under Title VII and so are analyzed under the burden-shifting framework of *McDonnell Douglas* . . . ." *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 550–51 (4th Cir. 2006).  The Fourth Circuit has "articulated a three-part analysis to be used for cases of retaliation under Title VII.  Under that analysis, the plaintiff must show [1] that he engaged in protected activity, [2] that the employer took adverse action against him, and [3] that the adverse action was causally connected to the plaintiff's protected activity." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998).

"If an FMLA plaintiff puts forth sufficient evidence to establish a prima facie case of retaliation and the employer offers a non-discriminatory explanation for the plaintiff's termination, the plaintiff bears the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation." *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir. 2001).  Here, Parker argues two separate comments by her supervisor create a genuine disputed issue of material fact as to her FMLA retaliation claim.

First, Parker avers Burbage called her "nitpicky" and stated she intended to write her up after she applied for FMLA.  The Magistrate Judge noted Parker "termination appears to be the only adverse action on which [Parker's] FMLA retaliation claim revolves." Report at 30.  The Magistrate Judge proceeded to opine in her Report, "Burbage's inquiry regarding Plaintiff's planned leave for foot surgery in late July 2017[,] was close in time to her August 2, 2017[,]

termination. However, any potential causal chain was broken by the August 1, 2017[,] patient complaint that was in no way related to attendance issues." *Id.* at 30 (citation omitted).

The Court agrees with both statements. Regarding the "nitpicky" comment, Parker noted, in her Objections, that this comment "establish[ed] a retaliatory animus towards Plaintiff, in further support that Plaintiff was terminated based [on] her exercise of her rights to take FMLA leave." Objections at 22. Parker, however, fails to provide any evidence her termination had any tangential relationship to the "nitpicky" comment and the events surrounding its alleged utterance by Burbage. Additionally, Parker's FMLA leave request was approved without incident.

Second, Parker claims Burbage asked her when she planned to take FMLA leave for her foot surgery a mere two days prior to her termination. Parker argues this question by Burbage serves as direct evidence of FMLA retaliation and creates a question of material fact as to whether Premise Health terminated her in retaliation for planning to take FMLA leave. As the Court already discussed, the Magistrate Judge properly noted the cancer patient's August 1, 2017, complaint filed against Parker served to break the casual chain in her argument.

Parker's only counter to the cancer patient's August 1, 2017, complaint breaking the causal chain is her unsupported theory Premise Health coerced the cancer patient into signing his complaint against Parker, which, according to Parker, necessitates a finding by the Court the casual chain was unbroken. The Court is unpersuaded by Parker's arguments. Therefore, it will overrule the objection, as well.

Parker's fifth objection asserts the Magistrate Judge improperly dismissed her § 1981 retaliation claim. Parker contends her termination resulted from the Charge filed on July 17, 2017, a mere sixteen days prior to her termination. The Magistrate Judge noted "the prima facie case for a retaliation claim is the same under both § 1981 and Title VII." Report at 31. "To establish a

13

prima facie case of retaliation in contravention of Title VII, a plaintiff must prove '(1) that she engaged in a protected activity,' as well as '(2) that her employer took an adverse employment action against her,' and '(3) that there was a causal link between the two events.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 271 (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005)).  As in Parker's FMLA retaliation claim, any potential causal chain was broken by the cancer patient's August 1, 2017 complaint against Parker.  Consequently, Parker is unable to establish a prima facia retaliation claim under § 1981.  Accordingly, this Objection is overruled.

Turning to Parker's sixth and final objection, she proclaims the Magistrate Judge was mistaken in suggesting her state-law-based breach of contract claims fail as a matter of law.  As the Court stated earlier, Parker asserts two breach of contract claims against Premise Health: breach of contract and breach of contract with fraudulent intent.

Concerning Parker's breach of contract claim, as an initial matter, Premise Health and Parker were not parties to any employment agreement.   Instead, Parker was an at-will employee of Premise Health.  Despite this fact, Parker argues Premise Health's *Code of Conduct* and *Harassment and Discrimination Policy* contain sufficient mandatory and promissory language to create a disputed issue of material fact as to whether an enforceable contract existed between Premise Health and Parker.

The Magistrate Judge, in her Report, noted "To be considered mandatory language, the purported contract must be definitive in nature, promising specific treatment in specific situations." Report at 35 (citation omitted) (internal quotation marks omitted)).  Additionally, the Magistrate Judge stated a plaintiff such as Parker must demonstrate to the Court some particular provision of

the handbook that limited the employer's right to discharge her, and the handbook's promise must restrict the right of an employer to discharge.

In support of Parker's contention Premise Health's *Harassment and Discrimination Policy* and *Code of Conduct* make promises regarding termination decisions, she references the following paragraphs from the policies.

> Harassment and Discrimination Policy, Retaliation:
>
> No one will be subject to, and Premise Health prohibits, any form of discipline, reprisal, intimidation or retaliation for good faith reports or complaints of incidents of discrimination or harassment of any kind, participating in an investigation, or opposing an unlawful employment practice. It is Premise Health's policy to not tolerate such behavior. Any employee, regardless of position or title, who is determined to have retaliated against any individual will be subject to serious disciplinary action, up to and including termination of employment.

Premise Health Harassment and Discrimination Policy at 4, Premise Health's motion for summary judgment at 187.

> Code of Conduct, Our Policy Against Retaliation:
>
> Everyone who makes a good-faith report of a violation of our Code or suspected violation of policy or law is protected. Any information you provide is treated confidentially, including your identity to the extent possible. Furthermore, we will not tolerate any actions that punish or retaliate against an employee who reports a concern. If someone does discriminate against, ostracize or harass a co-worker because of a report, he or she will be disciplined up to and including termination.

Premise Health Code of Conduct at 8, Premise Health's motion for summary judgment at 195.

But, having made a careful review of this material, the Court concludes there exists no language in these policy excerpts that make a promise to Parker regarding the inability of Premise Health to discharge her at-will. Most telling, in Parker's Objections, she fails to articulate how the above language from the two policies is tied to a restriction on her being terminated.

Turning to Parker's breach of contract accompanied by a fraudulent act cause of action , to establish such a claim, the "plaintiff must prove three elements: (1) breach of contract, (2)

15

fraudulent intent relating to the breach, and (3) a fraudulent act accompanying the breach." *Edens v. Goodyear Tire & Rubber Co.*, 858 F.2d 198, 202 (4th Cir. 1988) (citation omitted).  Parker's breach of contract accompanied by a fraudulent act claim must also fail as a matter of law.  This is so because, as the Court discussed in the preceding paragraph, Parker's employment was at-will and no agreement not to terminate Parker existed under the facts of this case.  As such, there was not a contract.  Accordingly, the Court overrules the objection.

After a thorough review of the Report and the record in this case pursuant to the standards set forth above, the Court overrules Parker's Objections, adopts the Report, and incorporates it herein.  Therefore, it is the judgment of the Court Premise Health's motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

Signed this 30th day of September 2020, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE
